### CUMMINGS v. SYNNOTT.

(Circuit Court of Appeals, Third Circuit. February 2, 1903.)

#### No. 25.

**1. ASSUMPSIT—GROUNDS TO SUPPORT ACTION—IMPLIED PROMISE.**

Plaintiff and defendant, who with another owned all the stock of a corporation, on behalf of themselves and such other entered into a contract for the sale of said stock. On the same date defendant and the purchaser made a secret agreement by which defendant was to be paid a further sum for his interest, in consideration of which he also gave an option on other property owned by him. Both the agreements were carried out. *Held*, that whatever might be defendant's liability in an action for deceit or a suit in equity for an accounting, plaintiff could not maintain an action in assumpsit to recover a definitive part of the

---

¶ 1. See Assumpsit, Action of, vol. 5, Cent. Dig. § 1.

amount so received by defendant, and claimed as his own, there being neither an express nor implied promise to support such action.

Gray, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the District of New Jersey.

For opinion below, see 116 Fed. 40.

C. V. D. Joline and F. P. Prichard, for plaintiff in error.

M. Hampton Todd and D. J. Pancoast, for defendant in error.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

DALLAS, Circuit Judge. This was an action at law. The plaintiff (defendant here) declared in assumpsit, and the declaration stated his cause of action to be "that the said defendant, * * * as the agent of said plaintiff, sold shares of stock of the plaintiff in the Atlantic Match Company * * * for a large sum of money, to wit, $100,000, which money he received, and neglected and failed to pay. to the plaintiff." Hence it appears that the promise specially averred is not an express one, but one to be implied by law from the alleged fact that the defendant had, as the agent of the plaintiff, received $100,000 in payment for shares of stock which belonged to the plaintiff. We have no doubt of the legal sufficiency of this count; but, in our opinion, neither it, nor any of the common counts with which it was· joined, was sustained by the proofs.

There seems to have been no dispute as to the material facts. At all! events, they were conclusively established, and for the present purpose· may be briefly stated. The Atlantic Match Company was a corpora-- tion having a stock capital of $2,000,000, of which John E. Cummings· (defendant below) owned 37½ per centum, Thomas Synnott (plaintiff below) owned 37½ per centum, and a certain Charles H. Graham owned 25 per centum. In July, 1901, Frederick C. Eaton, on behalf of the National Match Company, proposed to purchase all the stock of the Atlantic Match Company. His negotiations were conducted! with Cummings and Synnott, the latter acting on behalf of Graham as well as of himself. On July 18, 1901, Eaton addressed a letter to. Synnott, in which he said:

"I will take over the entire capital stock of the Atlantic Match Company;. giving in exchange therefor five hundred thousand shares of preferred stock and two hundred fifty thousand shares of the common stock of the National Match Company."

Upon the following day an agreement in writing was made between Eaton and Cummings, as follows:

"July 19, 1901.

"Memo. of agreement between J. E. Cummings of the Atlantic Match Co. and F. C. Eaton, of the National Match Co. J. E. Cummings agrees to sell the entire capital stock of the Atlantic Match Co. to F. C. Eaton upon the following terms: Eaton gives in exchange for said stock $500,000 of the Preferred stock of National Match Co. $250,000 of Common stock of said Co. and $200,000 in cash. The Atlantic Match Co. stock is to be delivered to the Standard Trust Co. of New York who will issue temporary receipt or certificate therefor which shall be exchanged for certificates of stock of National Match Co. as soon as issued as above stated. The cash payments are to be $20,000 upon signing of contract for sale $80,000 on August 5, and

$100,000 on September 5. The National Match Co. to guaranty Eaton's purchase. The entire bond subscription of the Atlantic Match Co. is to be canceled.

Possession is to be given August 1st.

Thos. W. Synnott and J. E. Cummings are to be elected directors of the National Match Co. and J. E. Cummings is to remain in the business in employ of National Match Co.

"Correct:    F. C. E.
            "J. E. C.
"Approved:   Jos. Swift."

Joseph Swift, who approved this agreement, was the president of the National Match Company. Neither Synnott nor Graham were informed of it, and all knowledge of it was withheld from them because Cummings desired to keep them in ignorance of its provision for the payment of $200,000 in cash, which sum it was understood between him and Eaton was to be paid solely to Cummings, if he would give to Eaton the option to purchase the interest of Cummings in the Safe Harbor Match Company, and would assume certain other obligations, to be presently more particularly referred to. Upon July 23, 1901, a contract of sale was executed by Eaton, Synnott, and Cummings, and at the same time a separate agreement was, without the knowledge of Synnott, entered into between Eaton and Cummings.

The agreement first mentioned is as follows:

"This agreement made this 23d day of July, A. D. 1901, between Thomas W. Synnott and J. E. Cummings of the city of Philadelphia, parties of the first part, and F. C. Eaton of the city of New York, party of the second part, witnesseth:

"Parties of the first part in consideration of the sum of one dollar, to them in hand paid by party of the second part, do hereby sell, assign, and transfer to said second party, the entire capital stock of the Atlantic Match Company, a corporation duly organized under the laws of the state of New Jersey; said capital stock consisting of seven hundred and fifty thousand ($750,000) dollars preferred stock, and two million ($2,000,000) dollars of common stock.

"The first parties agree that the bond issue of the Atlantic Match Company, which has been underwritten, to wit: two hundred and fifty thousand ($250,000) dollars, shall be canceled; party of second part, in consideration of above transfer of said Atlantic Match Company's stock, hereby sells, assigns, and transfers to said first parties or their assigns, five hundred thousand ($500,000) dollars of preferred stock and two hundred and fifty thousand ($250,000) dollars of common stock of the National Match Company, a corporation duly organized under the laws of the state of New Jersey.

"The parties of the first part agree to deposit said Atlantic Match Company's stock with the Standard Trust Company of New York for account of second party, and second party hereby authorizes said Standard Trust Company to give in exchange therefor certificates of stock of the National Match Company, as above provided. In witness thereof the parties have set their hands the day and year above written.

                                        "F. C. Eaton.
                                        "T. W. Synnott.
                                        "J. E. Cummings.

Indorsed: "National Match Co. has 1,000,000 of preferred 6% noncumulative stock and $1,500,000 of common stock of which 1,000,000 preferred stock and 500,000 of common stock has been subscribed for on terms of subscribers agreement, leaving 1,000,000 of common stock to be used for future purposes. The liabilities of the Atlantic Match Co., consisting of notes, &c., to the amount of about 94,000, are to be paid by the National Match Co.

between date hereof and Jan. 1, 1902, at which time the bonds of the Atlantic Match Co. will be canceled. F. C. Eaton."

The private agreement between Cummings and Eaton is as follows:

"[Across top margin] Approved. Jos. Swift, Frank Tilford, F. C. Eaton.
"This agreement, made this 23d day of July, A. D. 1901, between J. E. Cummings, of the city of Philadelphia of the first part, and F. C. Eaton of the city of New York, of the second part, witnesseth: Party of first part, in consideration of the sum of two hundred thousand ($200,000) dollars, sells, assigns and transfers all his right, title and interest, in and to the stock of the Atlantic Match Company, a corporation duly organized under the laws of the state of New Jersey, to second party. Party of second part agrees to pay said sum of two hundred thousand ($200,000) dollars, in the following manner to first party: Twenty thousand ($20,000) dollars on or before July 27th; eighty thousand ($80,000) dollars on or before August 5th, and one hundred thousand ($100,000) dollars on or before September 5th. Party of the first part covenants and agrees that possession of the Atlantic Match Company's business shall be turned over to second party on the fifth day of August, 1901; party of first part further agrees that in consideration of one dollar to him in hand paid by the party of the second part, the receipt of which is hereby acknowledged, that second party shall have the option to purchase first party's interest in the property and business of the Safe Harbor Match Company, which said property is located at Safe Harbor, Pennsylvania, at a price to be determined by examination of books, said price not to exceed the actual cash paid in to said company. This option to cover a period of six months from date hereof. First party also agrees to use every means to secure balance of Safe Harbor Match Co. on terms above set forth. The first party also covenants and agrees with second party that during the period of this option, second party shall have the entire output of the Safe Harbor factory at factory cost of goods. This contract is made part of contract of even date between Thomas W. Synnott, J. E. Cummings and F. C. Eaton. In witness whereof the parties hereto have set their hands and seals the day and year first above written.

"J. E. Cummings. [L. S.]
"F. C. Eaton. [L. S.]"

Cummings was paid $200,000 under the agreement between him and Eaton; but that he did not actually receive this money or any part of it as the agent of Synnott, or make any express promise to pay him any portion of it, is manifest, and nothing appears from which, in our opinion, such a promise could, by implication or imposition of law, be imputed to him. This agreement, in pursuance of the understanding before alluded to, conferred upon Eaton an option to purchase the interest of Cummings in the property and business of the Safe Harbor Match Company, and contained an undertaking on his part that during the term of that option the National Match Company should have the entire output of the Safe Harbor factory at factory cost; and by the agreement of July 19, 1901, it had already been stipulated that Cummings would remain in the employ of the National Match Company. In none of these matters had either Synnott or Graham any share, and while it may well be that an action of deceit by Synnott, or a suit in equity by him and Graham, for an accounting, etc., could have been maintained, we are constrained to hold that this action of assumpsit, in which Synnott alone claimed a definitive part of the gross amount which Cummings had received individually, lacked the essential requisite of a promise, either express or implied, to support it. We are therefore of opinion that the instruction which was given to the jury to find for the plaintiff was erroneous, and that the request of the de-

fendant for binding instructions in his favor ought to have been granted, and accordingly the judgment of the circuit court is reversed.

GRAY, Circuit Judge, dissents from this judgment.